IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01195-CMA-MEH

QUINTON HOLDINGS, LLC,

    Plaintiff,

v.

AXYS GOLF LLC, *et al.*,

    Defendants.

**DEFENDANTS' AXYS GOLF LLC'S AND ERIC KAPLAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

I.    **Introduction**

Plaintiff Quinton Holdings, LLC's motion for a temporary restraining order is the latest gambit in a harassment campaign aimed at destroying a competitor. This dispute began in March 2020 when, out of the blue, Plaintiff's principal Chuck Quinton began to threaten, disparage, and defame defendant Eric Kaplan and his company, Axys Golf, LLC. Falsely claiming that Mr. Kaplan, who has taught major PGA champions, "stole" a teaching method that Quinton now admits was not his own, Quinton sent a series of threatening messages to Mr. Kaplan – entirely without warning and demanding immediate action. *See*, *e.g.*, Declaration of Eleanor Lackman ("Lackman Decl."), ¶ 2, Ex. A at 9 ("I have a call in 30 minutes to file suit with my attorney."); *Id.* ("I have your address."); *Id.* ("I doubt your $300k condo is going to cover much when I pursue damages in the millions.").

12211486.2

Quinton also encouraged members of his competing golf instruction service, RotarySwing, to leave negative comments on Mr. Kaplan's YouTube videos accusing him of plagiarism. As one member said, Quinton has thousands of fans willing to harass Mr. Kaplan in order to "put his ass right out of business." Lackman Decl., ¶ 2, Ex. A at 11. As a reward, Quinton suggested that "after all the legal bills are paid, we take the rest of the money from the lawsuit and [RotarySwing] members take over Pebble Beach for the day!" *Id.*

In response, Mr. Kaplan did what any person on the receiving end of such attacks would do: he exposed the truth. Through RotaryTruth.com, he detailed this harassment and facts confirming that Quinton is the true fraud, including because he effectively stole his teaching methods from biomechanics expert Alison Thietje, whose videos and materials taught the same techniques to Mr. Kaplan. Quinton's efforts to get RotaryTruth taken down by this motion therefore have nothing to do with consumer protection (the purpose of the Lanham Act) and everything to do with massaging Mr. Quinton's bruised ego and protecting his claimed method from being identified for what it is: a wholesale taking of someone else's material under an unfair agreement.

Plaintiff's motion, including its vastly overbroad proposed order, fails to accomplish its goal. In order to obtain a temporary restraining order or preliminary injunction in the Tenth Circuit, a party must show (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm in the absence of injunctive relief; (3) that the balance of hardships tips in the movant's favor; and (4) that the injunction sought is in the public interest. *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226

(10th Cir. 2007) (preliminary injunction denied where movant failed to prove likelihood of success on the merits).

Plaintiff's motion satisfies none of those requirements, much less all of them as required. The motion should be denied accordingly.

## II.     Plaintiff's Requested Injunctive Relief Is Impermissibly Overbroad

"The law requires that courts closely tailor injunctions to the harm that they address." *ALPO Petfoods v. Ralston Purina Co.*, 913 F. 2d 958 (D.C. Cir. 1990) (injunction must be closely tailored to cover only commercial speech that is most likely to deceive customers and harm plaintiff). Here, despite taking issue with just a small handful of alleged "falsehoods" scattered throughout the robust RotaryTruth website, Plaintiff seeks to have the *entire* RotaryTruth website taken down. This request is particularly problematic because Plaintiff, in failing to challenge the vast majority of the statements on the website, admits that they are true and therefore not permissibly restrained under First Amendment principles. These key statements include but are not limited to the following:[1]

- The fundamentals Quinton claims Mr. Kaplan "stole" have been openly discussed since at least 1932, including in the book *A New Way To Better Golf*. Lackman Decl., ¶ 2, Ex. A at 21-22.

---

[1] Because these statements were made from Florida in response to an attack on a Florida company, there is some question whether this Court has can assert jurisdiction over Axys or Mr. Kaplan, or whether this Court is the appropriate venue. *See Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 509960 (N.D. Ill. Jan. 23, 2018).

- Mr. Kaplan began working with a man with Parkinson's disease in 2000, and used anatomical-based methods to help him to refine his golf swing in order to increase his mobility and stability. *Id.* at 19-20.
- In Quinton's words, his teaching method "isn't just his brainchild," and Alison Thietje's knowledge and experience was "instrumental." Indeed, as will be explained in conjunction with the preliminary injunction motion, Quinton credited her for the items Quinton claimed publicly – and in his pleadings – Kaplan "stole." *Id.* at 27.
- After working with Alison Thietje, Quinton published a book promoting her methods and pulled his prior book (espousing different methods) off shelves. *Id.* at 39-40.
- Quinton lied to the public and his medical board that Alison Thietje's work and swing model was in fact his own.[2] *Id.*

If Plaintiff's motion is granted, Quinton will succeed in suppressing admittedly true information directly related to Mr. Kaplan's defense of his reputation. Particularly where Plaintiff's claimed outrage centers on trivial items such as whether a contract was entered into between Mr. Quinton and Ms. Thietje in 2008 or 2009, there is no basis on these facts for such broad injunctive relief to silence a matter of public interest that came about as a result of Mr. Quinton's own misguided attacks on Axys Golf and Mr. Kaplan.

---

[2] No statements from Alison Thietje are identified by Plaintiff (aside from Mr. Kaplan's reference to one of her recollections about what she thought Mr. Quinton was in the business of before he started getting into golf instruction), and none of her services are advertised on the website. As such, the Lanham Act claim should fail as to her on that basis alone.

12211486.2                                             4

### III. Plaintiff Does Not Meet The High Standard Of Proof Required To Grant Injunctive Relief

Even where the requested relief is properly tailored, injunctive relief is an extreme remedy, and requires a party to make a strong showing of the required four elements when seeking a temporary restraining order. *Coalition for Equal Rights, Inc. v. Owens*, 2006 WL 8444238 at *2 (D. Colo. June 23, 2006). The standard is even higher when a party seeks a mandatory injunction that orders a party to take action altering the status quo (also known as a "disfavored" injunction). *See In re HomeAdvisor, Inc. Litigation*, 2019 WL 3943703, at *3 (D. Colo. Aug. 20, 2019) (to obtain mandatory injunction movant must make a heightened showing of the four factors).

Plaintiff avoids this showing by incorrectly claiming that it is not seeking a "disfavored" injunction because its motion neither mandates action nor changes the status quo. Not so. The motion seeks to force Defendants to remove RotaryTruth, which clearly mandates action. Moreover, the status quo is that RotaryTruth exists in response to the false harassment campaign undertaken by Quinton and his followers. Were the site removed, the status quo would certainly be changed, as Quinton's online disparagement would go unchallenged. Accordingly, there is no question Plaintiff seeks a "disfavored" injunction and should be subject to a heightened standard of proof.

### IV. Granting Injunctive Relief Will Be Inequitable And Against Public Interest

The equities weigh strongly in favor of denying injunctive relief due to the First Amendment concerns raised by Plaintiff's motion. RotaryTruth exists only because Mr. Quinton, without warning, began an aggressive campaign to destroy Axys Golf's

competing business and Mr. Kaplan's reputation. This occurred before any effort was made to confront Mr. Kaplan. Quinton now refuses to retract any of his statements, although he was forced to amend his Complaint when confronted with the facts about Ms. Thietje's material. As such, given the entirely false character of Quinton's accusations and tactics, Mr. Kaplan had a right to, and did, fight back and defend his business and reputation. If RotaryTruth.com is taken down, he cannot do that. Meanwhile, Quinton will be emboldened to continue acting with impunity as he has thus far. This not only inhibits the defendants' First Amendment rights, but it is in no way in the public interest of allowing open and free expression, communication, and resolution of disputes.

## V.      Plaintiff Provides Scant Evidence Of Irreparable Harm

The motion fails to establish that Plaintiff will suffer irreparable harm. *See George Washington Home Owners Associations, Inc. v. Widnall*, 863 F. Supp. 1423, 1427 (D. Colo. 1994) (injunction denied where plaintiffs failed to indicate nature of harm or articulate any particular harm). Plaintiff submits no evidence that any RotarySwing members canceled memberships because of any of the identified "misstatements" on RotaryTruth (*e.g.*, that a contract was signed in 2008 rather than 2009). Moreover, Plaintiff's pointing to just one cancellation since RotaryTruth was created (out of thousands of RotarySwing members) further confirms there is no causal nexus between the website and Plaintiff's claimed injury (though Defendants deny any injury exists). Even this identified cancellation references the material contained in Mr. Quinton's disparaging video that RotaryTruth elegantly takes apart with citations to facts and evidence.

Plaintiff's argument is further undercut because RotaryTruth has existed for over a month. If the website is as damaging as Plaintiff claims, one would think Plaintiff would have acted immediately to remove it. *See Vivos Therapeutics, Inc. v. Parks*, 2020 WL 2029268 at *2 (delay in seeking temporary restraining order supports denial of relief).

### VI. Plaintiff Is Not Likely To Succeed On The Merits Of Its Claims

While Plaintiff cannot satisfy three of the four requirements for granting a temporary restraining order in the Tenth Circuit, and therefore should have its motion denied for three reasons, the motion also should be denied because Plaintiff is unlikely to prevail on the merits of its claims.

Plaintiff does not and cannot state a claim under Section 43(a)(1)(B) of the Lanham Act for false advertising.[3] This requires proof that a defendant made (1) material false or misleading representations of fact in connection with the commercial advertising or promotion of a product; (2) in commerce; (3) that are likely to cause confusion or mistake as to either the origin, association or approval of the product with or by another, or the characteristics of the goods or services; and (4) injure the plaintiff. *Digital Ally, Inc. v. Utility Associates, Inc.*, 882 F.3d 974, 978 (10th Cir. 2018).

---

[3] Plaintiff's motion conflates Lanham Act Sections 43(a)(1)(A) and 43(a)(1)(B) and suggests that claims are asserted under both. To the extent Plaintiff is asserting a claim under Section 43(a)(1)(A), it is not viable. The website does not use any source identifier affiliated with Plaintiff, and Plaintiff does not claim RotaryTruth.com creates consumer confusion. *See* 15 U.S.C. § 1125(a)(1)(A). Moreover, in the June 1, 2020 pre-motion conference of counsel, Plaintiff's counsel confirmed Plaintiff is relying just on Section 43(a)(1)(B), and therefore the certification regarding the meet-and-confer is not satisfied as to the false designation of origin claim under Section 43(a)(1)(A).

Plaintiff's false advertising claim fails on three salient elements. First, the website is not a commercial advertisement or promotion because it is aimed at responding to Quinton's false claims and disparagement of Mr. Kaplan, and also does not propose a commercial transaction or indicate one is available. *See, e.g., CPC Intern., Inc. v. Skippy Inc.*, 214 F. 3d 456, 461-462 (4th Cir. 2000) (injunctive relief denied on First Amendment grounds where website containing historical and editorial comment of dispute was created for primarily informational purposes and did not propose commercial transaction); *see also Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1289-1290 (M.D. Ala. 2019) (holding that "informative and persuasive speech on matters of public concern" is "entitled to the highest level of protection under the First Amendment" even where it is economically motivated) (appeal pending).[4]

Second, the website does not make misrepresentations regarding Plaintiff's goods and services. *Bob Mills Furniture Co., L.L.C. v. Ashley HomeStores, Ltd.*, 2017 WL 11144629, at *2 (W.D. Okla., July 25, 2017) (motion to dismiss granted on false advertising claim where representations at issue did not concern nature or quality of services). All of the statements on the website go directly to a video Mr. Quinton posted disparaging Mr. Kaplan, along with other false statements made online. Even the material Plaintiff identifies concerns the date of a private contract, a misstated allegation that was Mr. Quinton's admitted fault, Ms. Thietje's recollection of Mr. Quinton's prior work history,

---

[4] The reference at the very end of the page to Axys Golf's website "does not merely 'propose a commercial transaction'"; it simply identifies the speaker and the principal of the company who is so heavily disparaged in the acidic materials Mr. Quinton disseminated. Further, given that Mr. Quinton was the catalyst for defendants' response, he cannot be heard to complain. *See Coral Ridge Ministries Media*, *supra*.

and other points that have nothing to do with Plaintiff's claimed "methods" or learning how to hit a golf ball generally.

Third, none of the alleged misrepresentations identified in the motion is material. *See Hill's Pet Nutrition, Inc. v. Nutro Products, Inc.*, 258 F. Supp. 2d 1197, 1211 (D. Kan. 2003) (to establish that representation is material, plaintiff must show it is likely to influence purchasing decisions). It is implausible that a consumer will base a buying decision on whether Quinton signed a contract with Alison Thietje in 2008 rather than 2009, or on the fact that Mr. Kaplan began teaching major champions biomechanics-based techniques one year as opposed to four years before he was alleged to have accessed RotarySwing's materials.

### VII.  Conclusion

For the foregoing reasons, Plaintiff's motion for a temporary restraining order should be denied in full.

|  |  |
|---|---|
| DATED:  June 2, 2020 | Respectfully submitted, |
|  | By:  */s/ Carolyn Juarez*  |
|  | Carolyn Juarez<br>Neugeboren O'Dowd PC<br>1227 Spruce St., Ste. 200<br>Boulder, CO  80302<br>T: (720) 536-4904<br>F: (720) 536-4910<br>carolyn@nodiplaw.com |
|  | Eleanor M. Lackman<br>(Admission Pending)<br>Mitchell Silberberg & Knupp LLP<br>437 Madison Ave., 25th Floor<br>New York, NY  10022<br>T:  (212) 878-4890<br>eml@msk.com |
|  | *ATTORNEYS FOR DEFENDANTS AXYS GOLF LLC AND ERIC KAPLAN* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via electronic mail to all Parties listed on the Service List on this 2nd day of June, 2020.

*/s/ Carolyn Juarez*