**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-CV-01195-CMA-MEH

QUINTON HOLDINGS, LLC,

       Plaintiff,

  v.

AXYS GOLF LLC, *et al.*,

       Defendants.

**DEFENDANTS' SPECIAL MOTION TO DISMISS PURSUANT TO COLORADO'S
ANTI-SLAPP STATUTE, COLO. REV. STAT. § 13-20-1101**

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................... 1

II.  PLAINTIFF'S CLAIMS AGAINST DEFENDANTS' RIGHT TO SPEAK ............... 2

III.  COLORADO'S ANTI-SLAPP STATUTE ................................................... 5

IV.  PLAINTIFF'S CLAIMS SEEK TO RESTRAIN PROTECTED SPEECH ON AN
     ISSUE THAT PLAINTIFF MADE A MATTER OF PUBLIC CONCERN ............... 6
     A.  The Speech-Based Claims Arise from Defendants' Furtherance of
         Their Right of Free Speech in Connection With a Public Issue ................. 6
     B.  Plaintiff Will Be Unable to Meet Its Burden of Establishing a
         Reasonable Likelihood that It Will Win on Its Speech-Based Claims ........ 8
         1.  Plaintiff's Own Direct and Tacit Admissions, as Well as the
             Evidence Submitted, Show that Plaintiff's Claim is Not Likely to
             Succeed ........................................................................................ 9
         2.  The Commercial Disparagement Claim Additionally Fails
             Because The Statements Take Issue with Quinton, Not
             Plaintiff's Product or Service ....................................................... 14

CONCLUSION ........................................................................................ 15

CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(a) .............................. 16

i

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*American Humane Ass'n v. Los Angeles Times Communications*,
   92 Cal. App. 4th 1095 (2001) ................................................................................. 15

*Brokers' Choice of Am. v. NBC Universal, Inc.*,
   861 F.2d 1081 (10th Cir. 2017) .............................................................................. 8

*Bustos v. A & E Television Networks*,
   646 F.3d 762 (10th Cir. 2011) ......................................................................... 12, 13

*Fox Searchlight Pictures, Inc. v. Paladino*,
   89 Cal. App. 4th 294 (2001) ................................................................................... 8

*Fry v. Lee*,
   408 P.3d 843 (Colo. App. 2013) ............................................................................. 9

*Giduck v. Niblett*,
   408 P.3d 856 (Colo. App. 2014) ............................................................................. 9

*Gomba v. McLaughlin*,
   180 Colo. 232 (1972) ............................................................................................. 9

*Gordon v. Boyles*,
   99 P.3d 75 (Colo. App. 2004) ................................................................................. 9

*Jankovic v. Int'l Crisis Grp.*,
   429 F.Supp. 2d 165 (D.D.C. 2006) ....................................................................... 11

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
   885 F.2d 659 (10th Cir. 2018) ................................................................................ 6

*Macias v. Hartwell*,
   55 Cal. App. 4th 669 (1997) ................................................................................... 7

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) .................................................................................................. 11

*Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) .................................................................................. 6

ii

## TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Seelig v. Infinity Broad. Corp.*,
 97 Cal. App. 4th 798 (2002) ............................................................................... 8

*SG Interests I Ltd. v. Kolbenschlag*,
 452 P.3d 1, 8 (Colo. App. 2019) ...................................................................... 11

*Sieverding v. Colo. Bar Ass'n*,
 2003 WL 22400218 (D. Colo. Oct. 14, 2003) ................................................. 7

*Simpson Strong-Tie Co., Inc. v. Gore*,
 49 Cal. 4th 12 (2010) ...................................................................................... 8

*Teilhaber Mfg. Co. v. Unarco Mat'ls Storage*,
 791 P.2d 1164 (Colo. App. 1989) .................................................................. 14

*TMJ Implants, Inc. v. Aetna, Inc.*,
 498 F.3d 1175 (10th Cir. 2007) ...................................................................... 14

*Utah Lighthouse Ministry v. Foundation for Apologetic Information and
 Research*,
 527 F.3d 1045 (10th Cir. 2008) ........................................................................ 8

*Wong v. Jing*,
 189 Cal. App. 4th 1354 (2010) ........................................................................ 7

**STATUTES**

Cal. Civ. Proc. Code § 425.16 ................................................................................. 5

Colo. Rev. Stat.
 § 13-20-1101 ............................................................................................... 1, 5
 § 13-20-1101(1), (3)(b) .................................................................................. 5
 § 13-20-1101(1), (3)(a)-(c) ............................................................................. 5
 § 13-20-1101(4)(a) ......................................................................................... 5
 § 13-20-1101(6), (7) ....................................................................................... 5

Lanham Act .......................................................................................................... 1, 8

iii

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>**Page(s)**</u>

Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

D.C.COLO.LCivR 7.1(a) ............................................................................... 16

George Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*,
  7 Pace Enviro. L. Rev. 1 (1989) ................................................................. 5

United States Constitution, First Amendment ............................................... 9

iv

Defendants AXYS Golf LLC and Eric Kaplan ("Defendants") submit this Special Motion to Dismiss Pursuant to Colorado's Anti-SLAPP Statute, Colo. Rev. Stat. § 13-20-1101, requesting that the Court dismiss all claims pertaining to the website RotaryTruth.com and granting other relief provided in the anti-SLAPP Statute.

## I.      INTRODUCTION

Whether couched as Lanham Act claims, violations of consumer protection law, "misappropriation" of business value, defamation, or commercial disparagement, Plaintiff's lawsuit seeks a restraint on speech on an issue that Plaintiff's owner made very public in the golf community and beyond when it and its founder elected to viciously and thoroughly attack a private citizen on grounds that Plaintiff must have known were baseless. Defendants' alleged sin was offering full-swing golf content rooted in the same general idea as Plaintiff's content, which Plaintiff now concedes derives from someone else. The basis for Plaintiff's First Amended Complaint ("FAC") is that it is allegedly illegal to defend oneself, one's reputation, and one's business from an onslaught – which allegedly was provoked by emails from a single person.

It is undisputed that Plaintiff threw a group of stones. That it has shown itself to live in a glass house does not give the company a basis to demand that the Court restrict speech that it does not like. Indeed, Plaintiff seeks to ensure that everyone can speak freely about the issue *except* for Mr. Kaplan. This is exactly the type of action that the Colorado legislature sought to prevent when it enacted the anti-SLAPP statute. As there is no probability that Plaintiff will prevail on its speech-based claims, the claims

1

should be stricken and appropriate relief awarded to make Defendants whole for having to defend their right to speak freely in defense of themselves.

## II.     PLAINTIFF'S CLAIMS AGAINST DEFENDANTS' RIGHT TO SPEAK

Based on a single paragraph in its First Amended Complaint ("FAC"), ¶ 61, Quinton asks this Court to censor an entire website that defends Defendants against an out-of-the-blue ambush of disparagement in March, just as Defendants' online business was gaining momentum. Nothing was off-limits to Plaintiff in its scorched-earth attack: Plaintiff posted on its Facebook page, which has several thousand members, sent a false and disparaging email to its list of reportedly over 375,000 people, and called up the general manager at the club where Kaplan teaches to warn him of all the bad publicity he was about to receive. Declaration of Eric Kaplan, dated July 8, 2020 ("Kaplan Decl."), at ¶¶ 7, 10, 11 & Exs. B, E, F. Plaintiff even littered AXYS's YouTube page with attack statements – replying to positive comments with negative, false statements about how Defendants reportedly stole concepts that were created decades before Plaintiff's principal, Quinton, was born. *Id.* at ¶ 7 & Ex. B. As a reward to his loyal mud-slingers, Plaintiff offered to take them to the famous Pebble Beach golf course with the proceeds of taking everything Kaplan and his young family had to his name. *Id.* Some apparently took this offer very seriously, posting attacks in every place where Defendants and their students would be sure to see them, with Plaintiff continuing to egg them on. *Id.*

2

After getting past their shock, Defendants immediately retained counsel, who quickly contacted Quinton and sought to get the attacks to stop. Declaration of Eleanor M. Lackman, dated July 8, 2020 ("Lackman Decl."), at ¶ 2. Plaintiff's initial counsel, who reportedly had been 30 minutes away from filing a copyright infringement suit, disclaimed familiarity with the issue and put the matter off. *Id.* at ¶ 3. Plaintiff then engaged new counsel who was advised that the concepts and terminology his client was claiming (such as the words "hinging at the hips," "pushing" and "pulling" to describe body motion, and "rectangle" and "box" to identify whether the shoulders are slouched or neutral in the setup position) have long existed. *Id.* at ¶ 5. Nonetheless, as evidenced by the filing of the lawsuit on April 29, 2020, Plaintiff was not persuaded. Dkt. No. 1.

When yet another lawyer substituted in, on April 27, 2020 (over a month after the attacks had started), and with subscriptions down dramatically and other financial damage occurring, Defendants knew they had to do something with their evidence about the preexistence of the concepts that Plaintiff purportedly had invented. Lackman Decl. at ¶ 7, 8 & Ex. B; Kaplan Decl. at ¶ 14. So they assembled their proof and launched RotaryTruth.com (the "Website"), which contains a four-part description of the dispute and proceeds to disprove them through a robust collection of interviews, screenshots, quotes, and public records. Kaplan Decl. at ¶ 15; Lackman Decl. at ¶ 8 & Ex. B. For anyone who scrolls down to the third part, the Website reveals an ironic twist that Kaplan discovered online while doing his research into Rotary Swing: the methods Plaintiff offers were developed by someone else. *Id.* Under a purported deal, Quinton

3

offered to pay Alison Thietje for her collaboration, which resulted in a complete 180-degree turn from Plaintiff's prior methods (as many have observed). Kaplan Decl. at ¶¶ 12, 15 & Ex. G; Lackman Decl. at Ex. B; FAC ¶¶ 39-45.  But as soon as Quinton had what he needed, he terminated their arrangement. FAC ¶¶ 39-45. She never received a royalty, but as the site makes clear with exacting detail (including identical material in videos and verbatim quotations from Thietje's lectures and Quinton's book), not only is Quinton not the originator of the material that contains the ideas and word "box" that Defendants are claimed to have stolen, but his improper and aggressive approach against Defendants was designed to stop fair competitors from getting into the market. *See* Kaplan Decl. at ¶ 15; Lackman Decl. at Ex. B. Not satisfied to leave Thietje out in the cold while he enjoys the millions of dollars made on her content, he now has sued her, too. Dkt. No. 10.

The main page wraps up the story with a detailed, in-line response to Quinton's video missive that Quinton disseminated widely. At one point, Defendants' response video was hosted on YouTube, but Plaintiff evidently had it taken down. Kaplan Decl. at ¶ 15. While Plaintiff believes that detailed allegations are improper while unsupported invective is acceptable, the anti-SLAPP statute expressly prohibits the use of the court system to restrain full and fair comment on an issue.

III.     **COLORADO'S ANTI-SLAPP STATUTE**[1]

Colorado recently enacted Colo. Rev. Stat. § 13-20-1101, which provides for a

"special motion to dismiss" in cases where the defendant is sued on account of any "act

in furtherance of a person's right of petition or free speech," including "any written or

oral statement or writing made in a public forum in connection with an issue of public

interest." Colo. Rev. Stat. § 13-20-1101(1), (3)(a)-(c). If the Court finds, upon the filing of

such a motion, the defendant has satisfied the first prong of the statute, then the claims

must be dismissed "unless the court determines that the plaintiff has established that

there is a reasonable likelihood that the plaintiff will prevail on the claim." *Id.* Unlike with

a typical motion to dismiss, the Court may determine the motion based on supporting

and opposing affidavits filed in connection therewith. *Id.* at (3)(b). In addition, upon filing

the motion, all discovery is stayed; the denial of such a special motion is subject to an

interlocutory appeal as of right. *Id.* at § 13-20-1101(6), (7). If the motion is granted, the

defendant is entitled to an award of attorneys' fees. *Id.* at § 13-20-1101(4)(a).

The statute became effective on July 1, 2019, and therefore not much precedent

exists. However, the statute was modeled after, and copied almost verbatim from,

California's anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16. Given the near

identity of the California law to the Colorado law, and given the fact that this case

involves federal question jurisdiction, the basis for lack of applicability of the statute in

---

[1] The now well-known term "SLAPP" – for Strategic Lawsuit Against Public Participation – was actually first coined in Colorado, specifically by a law professor at the University of Denver. *See* George Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Enviro. L. Rev. 1 (1989).

5

federal court as noted in *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.2d 659 (10th Cir. 2018), does not apply. *Id.* at 670 (distinguishing New Mexico statute in diversity case from California anti-SLAPP statute that shifted substantive burdens and altered substantive standards). Under the nearly verbatim California statute, anti-SLAPP law may apply in federal court. *See id.*; *see also Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999). In light of the near-identity of the earlier-existing California statute, Defendants will rely heavily on California authorities where applicable to help flesh out the interpretation of a young but powerful statute.

## IV. PLAINTIFF'S CLAIMS SEEK TO RESTRAIN PROTECTED SPEECH ON AN ISSUE THAT PLAINTIFF MADE A MATTER OF PUBLIC CONCERN

### A. The Speech-Based Claims Arise from Defendants' Furtherance of Their Right of Free Speech in Connection With a Public Issue

Defendants easily prevail on the first prong of the test under the anti-SLAPP statute. While the matter could have been avoided if Plaintiff had sent a cease-and-desist letter like most aggrieved parties do, Plaintiff made the matter a public issue.

Plaintiff alleges in the FAC that its principal "has earned celebrity status and reputational prestige in the golfing world[.]" FAC ¶ 26. Plaintiff blasted its claims out to its mailing list of over 375,000 people, larger than the entire populations of the cities of New Orleans, St. Louis, Pittsburgh, or Honolulu. Quinton directed those on the list and members of his Facebook page to visit and share a video that he put up publicly on YouTube, which disparages a well-credentialed and respected golf teacher. Kaplan

6

Decl. at ¶¶ 9-11 & Exs. D-F. He also told his subscribers and fans to spread the word even more widely, and they did on YouTube and other places; Plaintiff himself was only too eager to join in the discussion as well. *Id.* In other words, Plaintiff made his grievances very public and advocated others to make it more so. *See Sieverding v. Colo. Bar Ass'n*, 2003 WL 22400218 (D. Colo. Oct. 14, 2003) (newspaper article published and distributed in plaintiff's community was a matter of public concern); *see also Wong v. Jing*, 189 Cal. App. 4th 1354 (2010) (publicly accessible websites are "public forums" for purposes of anti-SLAPP law). Moreover, as is evidenced by the number of golf instruction chat sites online (including the extensive forums at GolfWRX, that Plaintiff's message went to over 375,000 people and its video received at least 18,000 views, and that this lawsuit received coverage in the local press, *see* Kaplan Decl. at ¶ 14, the dispute easily falls within the broad meaning of "public interest." *Macias v. Hartwell*, 55 Cal. App. 4th 669, 673-74 (1997) (challenged speech pertained to public issues/interest because it affected 10,000 union members).

There is no dispute that the Website responds to these attacks and exercises Kaplan's right to defend himself against the barrage of direct shots at his business, integrity, and character. The Website opens with "Part 1/4: Chuck Quinton's vicious and meritless threats against top PGA Tour Coach Eric Kaplan . . . ." Lackman Decl. Ex. B. Moreover, while Plaintiff's out-of-context recitation of statements (FAC ¶ 61) seeks to target isolated statements that exist in various places, mainly deep in the Website, it is clear that Plaintiff's request for relief is targeted at the entire Website, and indeed at Defendants' right to teach online full-swing golf lessons using biomechanics-based

7

methods, which include the unchallenged methods used in the short game. *See Brokers' Choice of Am. v. NBC Universal, Inc.*, 861 F.2d 1081, 1109 (10th Cir. 2017) (matter is of public concern whenever it embraces an issue about which information is needed or is appropriate, or when the public may reasonably be expected to have a legitimate interest in what is being published); *see also Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807-08 (2002) (finding on-air radio discussion of plaintiff's participation in a reality show protected activity).

**B.     Plaintiff Will Be Unable to Meet Its Burden of Establishing a Reasonable Likelihood that It Will Win on Its Speech-Based Claims**

Having met the first prong, Plaintiff is required to show that it has a "reasonable likelihood" on prevailing on its claims. While Plaintiff has made the task somewhat difficult by weaving Website-directed statements into its Lanham Act and some of its state law claims, Defendants will focus on Counts V (defamation) and VI (commercial disparagement) for the sake of the motion, as those claims were added to the FAC specifically to attack the Website. *See* Dkt. No. 12-1 at 38-41.[2]  Even if Quinton himself

---

[2] Applying the statute to the Lanham Act, CCPA and misappropriation claims may nonetheless be proper to the extent they encompass noncommercial speech. *See Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1051–1054 (10th Cir. 2008) (false advertising claim implicated noncommercial speech); *compare Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12 (2010) (affirming dismissal under anti-SLAPP statute even though challenged statements involved claims for false advertising, were made in commercial context and were about plaintiff and not made for purposes of competing with plaintiff); *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307-08 (2001) (plaintiff "cannot frustrate the purpose of the SLAPP statute [by] combining allegations of protected and non-protected activity under the label of one 'cause of action'"). Indeed, ancillary claims are properly dismissed when they are based on the same statements which would not support a

8

joins the case, Plaintiff will not be able to show that it has a reasonable likelihood of prevailing on either claim – and certainly not on both.

      1.     <u>Plaintiff's Own Direct and Tacit Admissions, as Well as the Evidence Submitted, Show that Plaintiff's Claim is Not Likely to Succeed</u>

As a threshold matter, the fact that Plaintiff attacks only minor pieces of the Website forces Plaintiff to concede that it will be unlikely to succeed on a defamation claim. It is well-established that substantial truth is a complete and absolute defense to defamation, and a defendant need only show that "the substance, the gist, the sting of the matter is true." *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). Therefore, the question is whether "there is a substantial difference between the allegedly libelous statement and the truth; or, stated differently whether the statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter." *Gomba v. McLaughlin*, 180 Colo. 232, 236 (1972). This inquiry focuses on an "average reader." *Fry v. Lee*, 408 P.3d 843, 854 (Colo. App. 2013).

Given that the Website contains hundreds if not thousands of statements that Plaintiff does not challenge, the isolated comments, generally appearing very deep in the Website, about (a) the year in which a contract was allegedly signed and whether

---

defamation claim. *See Giduck v. Niblett*, 408 P.3d 856, 872 (Colo. App. 2014) ("As a division of this court has recognized, when defamation claims are properly dismissed, ancillary claims seeking recovery on other theories based on the same defamatory statements must also be dismissed" (citing *Fry v. Lee*, 408 P.3d 843, 855-856 (Colo. App. 2013)); *see also*, *Fry*, 408 P.3d at 856 ("[T]he district court did not err in dismissing Fry's ancillary claims, given that they allege damages resulting from defendants' purportedly defamatory statements. Absent a legally sufficient pleading of material falsity, recovery is barred by the First Amendment" (citation and quotation omitted)).

9

Thietje signed it in her own name or as principal of her company, (b) whether Quinton hired someone to do the job of transcribing Thietje's lectures for his 2010 book, (c) the later-asserted story about teaching stroke victims, (d) Thietje's recollection that Quinton had been selling snowboards before he became an online golf instructor, (e) whether 2014 is a year or "years" before 2015 or 2018, (f) whether Quinton said the story about Kaplan's father was made up or whether Quinton simply blessed the statement (Kaplan Decl. Ex. 17), and so on, are beside the point. *See* FAC ¶ 61.[3] The point of the Website is to (a) identify that Plaintiff widely disparaged Defendants for allegedly taking his "idea" of applying biomechanics to the full golf swing and incited others to trash Defendants' business and reputation, and (b) refute those allegations with hard evidence. This evidence relates to two themes: (1) the principles Defendants use are widely known and taught, were adopted from life and work experience, and date back to at least 1932; and (2) the concepts and material that Plaintiff claims he owns were not only taught by others previously, but were in fact taken from preexisting material to which Plaintiff received access under a quickly-terminated agreement with Thietje under which she received no percentage of the millions of dollars Plaintiff earns by disseminating her life's work as its own. Plaintiff challenges none of this. Indeed, as the evidence already submitted to the Court demonstrates, it is all true. Kaplan Decl. ¶¶ 6, 12, 15, 18, 19 & Exs. G, H, I; FAC ¶¶ 39-45.

---

[3] Plaintiff claims his list is "non-exhaustive," but its choice to focus on minutiae in its list leads to the reasonable conclusion that Plaintiff believes that the identified statements are the most actionable statements in Plaintiff's view.

The other identified comments are mere summaries of the evidence shown or are statements of opinion. The Website does in fact establish that Plaintiff/Quinton's methods are Quinton's version of Thietje's preexisting material, to whom Plaintiff is giving decreasing credit (even changing its website recently, *see* Lackman Decl. Ex. C). Plaintiff's aggressively litigated suit, in which he has roped in Thietje, shows that Quinton aggressively threatens those who reveal the truth. The very end of Quinton's attack video expressly claims credit for Kaplan's work. *See* Kaplan Decl. Ex. D [Quinton YouTube Video] at 6:07 ("To Rory and Adam and Bernhard and all the great success you guys have had on my material, you're welcome."). As to the comment about PGA Tour Pros, it is reasonable to read the comment to say that when you are coaching Bernhard Langer and Rory McIlroy, among other Major Champions (*see* Kaplan Decl. ¶ 17), the fact that a person may have coached a few players on minor tours or taught for a single season at a well-recognized golf course is not a fact worth qualifying – particularly not on a website that clearly is one with a subjective view. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990) (where the language used is "loose, figurative, or hyperbolic," this tends to negate the impression that a statement contains an assertion of verifiable fact). Nor is it problematic when Quinton has spoken about himself and his claimed experience online. *See Jankovic v. Int'l Crisis Grp.*, 429 F.Supp.2d 165, 177 n.8 (D.D.C. 2006), *cited by SG Interests I Ltd. v. Kolbenschlag*, 452 P.3d 1, 8 (Colo. App. 2019) (explaining that an allegedly defamatory statement was clarified by two internet links and "[w]hat little confusion the sentence couple possibly cause is easily dispelled by any reader willing to perform minimal research"). Through

11

any lens, the "gist" or the "sting" of the statements is substantially accurate, and that is enough.[4]

Plaintiff is unlikely to succeed on his claims for yet another reason. Not only must a statement be false, but it must be material. *Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011) (applying Colorado law). To be material, "the alleged misstatement must be likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth; a misstatement is not actionable if the comparative harm to the plaintiff's reputation is real but only modest." *Id.* at 765. It is absurd to think that any one of Plaintiff's subscribers—having read all about the unrestrained behavior Quinton engaged in against Defendants, and learned that Quinton's claimed "golden goose" that Defendants allegedly "stole" was actually taken from a teacher who was cut out of an expected partnership—would change their views if they knew, for instance, that the alleged contract was signed in 2009 versus 2008.[5]

---

[4] Plaintiff's attacks on the timeline of Kaplan's instruction are tortured: it is clear in context that Kaplan started applying biomechanics-based concepts with Leonard Redlich (which Mr. Redlich talks about on the site) and has continued to study, refine, and hone his teaching as he worked in the field with some of the top teachers and players in the world – no different than a lawyer does when she goes from graduating from law school to becoming a senior partner (or, if exceptionally good, a judge). Unlike Quinton, Kaplan does not contract for packages of material made by others: he applies his life experience as both teacher and scholar of golf to his goal of helping everyone, regardless of their physical condition, get better at the game and live better as a result. Kaplan Decl. ¶ 6; *see also* Declaration of Eric Kaplan in Support of Brief Regarding Charles Quinton Online Activities (Dkt. No. 40-1).

[5] Unsurprisingly, Plaintiff changes its tune when the shoe is on the other foot. In its June 29, 2020 filing (Dkt. No. 45), Plaintiff asserted that allegations made by Quinton against Mr. Kaplan online (i.e., that he is a "fraud" and a "charlatan" and that his efforts to

12

After overplaying his hand in the original Complaint, Plaintiff changed his story to admit the salient facts pertaining to the genesis of his content: Plaintiff now admits in the FAC that the material themes of the Website are true. *See* FAC ¶¶ 39-45. Plaintiff and its principal attacked Defendants and incited others to do so. Plaintiff did so all the while knowing that biomechanics content and terminology was preexisting, was not independently developed, and in fact had been taken wholesale from someone else under a contract so flimsy that Plaintiff itself cannot even produce a signed copy. *See* Plaintiff's Exhibit 12 Submitted for Preliminary Injunction Evidentiary Hearing.[6] Therefore, the Website is at least substantially true and Plaintiff will be unlikely to prevail accordingly.

---

temporarily appease Quinton and avoid a purportedly imminent lawsuit were admissions of "general douchebaggery" and "zero ethics") amounted to nothing more than statements of opinion and hyperbole. It is highly disingenuous to claim such statements are harmless and not actionable while at the same time claiming that statements about the date of a contract, the date Plaintiff claims Mr. Kaplan joined Rotary Swing, and a comparison between the level of students the parties teach, are somehow defamatory and require emergency relief.

[6] Because Quinton alleges his company to be well-known and himself a public figure (unlike Defendants), FAC ¶ 26, and/or because the statements involve a matter of public concern, Plaintiff will bear the burden of proving the falsity of a challenged statement. *See Bustos*, 646 F.3d at 764. Yet Plaintiff has never proven the date of the signature on the contract: there is no signed contract in the record. *See* Plaintiff's Exhibit 12 Submitted for Preliminary Injunction Evidentiary Hearing. Likewise, Plaintiff has not submitted evidence regarding the creation of the 2010 book (but objected to a subpoena to Quinton's co-author).

13

2. The Commercial Disparagement Claim Additionally Fails Because The Statements Take Issue with Quinton, Not Plaintiff's Product or Service

For the same reasons stated above, Plaintiff's commercial disparagement claim fails. Under Colorado law, Plaintiff must show that Defendants' statements were false, published to a third party, derogatory to Plaintiff's business in general or the quality thereof, intended to cause harm to Plaintiff's pecuniary interest or was reasonably believed to be likely to do so, with malice, and resulting in special damages. *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1200 (10th Cir. 2007). The constitutional protections afforded to a defendant in a defamation action are applicable to a defendant in a product disparagement action, and thus if the expressions could not support a defamation claim, they should fail here. *See id.*; *Teilhaber Mfg. Co. v. Unarco Mat'ls Storage*, 791 P.2d 1164, 1166-67 (Colo. App. 1989). As noted above, the challenged statements are immaterial and were made solely in self-defense against a man who told hundreds of thousands of golf aficionados that a top golf instructor was a fraud and a thief who had plagiarized every word of Plaintiff's teaching materials, and that the Major Champions Kaplan taught should be thanking Plaintiff for their success.

Moreover, important to this claim is that, if anything, the Website *lauds* the fundamental material that Plaintiff offers. The Website talks about the concepts of biomechanics-based instruction and the benefits they can have for everyone. The Website also places a pioneer in the field and former contract partner with Plaintiff on a pedestal. Thietje is featured in very in-depth interviews about her experience and the near identity between her life's work, which Plaintiff admittedly adopted for his more

14

recent instruction methods. *See* Kaplan Decl. at ¶¶ 12, 15, 19 & Ex. G, I; Lackman Decl. at Ex. B; FAC ¶¶ 39-45. If anything, it is a compliment, not disparagement. The only objects of Defendants' criticism are Plaintiff's and Quinton's malicious and misguided attacks on a respected instructor and his business, along with the publicly discussed fact (including on the public-facing site Rip-Off Report) that Quinton made millions off of selling online what is effectively Thietje's work and yet she was given nothing for it. Kaplan Decl. ¶ 12 & Ex. G.[7] Plaintiff does not contend that any of this is materially false, and thus Plaintiff will not be able to show a reasonable likelihood of success on the merits of the claim.

## CONCLUSION

This matter exemplifies why the Colorado Anti-SLAPP Statute was enacted. Defendants' motion should be granted, discovery should be stayed, and Defendants should be awarded their fees as provided by the statute.[8]

---

[7] Plaintiff will be unable to dispute that the tax document in the record does not relate to royalties for the online content, and indeed, despite the importance of this issue to Plaintiff, it has not submitted any royalty statements or other documentation.
[8] In states that have anti-SLAPP statutes, documentation of reasonable attorney's fees is generally submitted by separate motion for approval of the amount of the award. *See, e.g., American Humane Ass'n v. Los Angeles Times Communications*, 92 Cal. App. 4th 1095, 1103–1104 (2001) (holding that documentation of fees could be submitted in separate, later-filed motion because "the moving defendant will be able to more accurately document the fees and costs actually incurred if the amount is fixed at a later date"). Accordingly, in the event that they prevail, Defendants will present evidence, including relevant invoices, of their attorney's fees and costs in connection with the defense of these claims, including those incurred in connection with Plaintiff's motion for a temporary restraining order and preliminary injunction.

15

## **CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(a)**

Pursuant to D.C.COLO.LCivR 7.1(a), on July 2, 2020, counsel for Defendants sent an email to counsel for Plaintiff outlining the relief requested in this Motion and the legal basis for such relief. Counsel for Plaintiff and Defendants subsequently conferred by telephone on July 7, 2020, and further discussed the relief requested in this Motion. Plaintiff has stated it opposes the requested relief.

Dated: July 8, 2020

By: */s/ Eleanor M. Lackman*
    Eleanor M. Lackman
    Mitchell Silberberg & Knupp LLP
    437 Madison Avenue, 25th Floor
    New York, New York 10022
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239
    eml@msk.com

    */s/ Carolyn Juarez*
    Carolyn Juarez
    Neugeboren O'Dowd PC
    1227 Spruce Street, Suite 200
    Boulder, Colorado 80302
    Telephone: (720) 536-4900
    Facsimile: (720) 536-4910
    carolyn@nodiplaw.com

    Attorneys for Defendants
    AXYS GOLF LLC and ERIC KAPLAN

16

12289639.3

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via ECF to all counsel of record on this 8th day of July, 2020, with a courtesy copy sent by email to counsel for the following:

Brett Caban, Esq.
Aegis Law
601 S. Lindbergh
Frontenac, MO  63131
T: (314) 454-9100
bcaban@aegislaw.com

Attorneys for Defendants Alison Thietje, Mind-2-Motion, LLC,
Mind2Motion Golf, LLC, and Motion Memory Golf, LLC

/s/      Carolyn Juarez

17

12289639.3