IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-01195-CMA-MEH

QUINTON HOLDINGS LLC, *a Colorado Limited Liability Company*,

　　Plaintiff,

v.

AXYS GOLF LLC, *a Florida Limited Liability Company*,
ERIC KAPLAN, *an individual*,
MIND-2-MOTION, LLC, *a Missouri Limited Liability Company*,
MIND2MOTION GOLF, LLC, *a Missouri Limited Liability Company,*
MOTION MEMORY GOLF, LLC, *a Missouri Limited Liability Company,*
ALISON THIETJE, *an individual*,

　　Defendants.

---

**ORDER DENYING BOTH PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND DEFENDANTS' SPECIAL MOTION TO DISMISS PURSUANT TO COLORADO'S ANTI-SLAPP STATUTE**

---

　　This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Motion") (Doc. # 13) and Defendants' Special Motion to Dismiss Pursuant to Colorado's Anti-SLAPP Statute, Colo. Rev. Stat. § 13-20-1101 ("Defendants' Motion") (Doc. # 50). The Court has determined that a hearing would not materially assist in its determination of either motion. For the following reasons, both motions are denied.

## I.　　BACKGROUND

　　Plaintiff initiated the instant case against Defendants Axys Golf LLC ("Axys Golf")

and Eric Kaplan on April 29, 2020. (Doc. # 1.) Plaintiff filed its first Amended Complaint and Jury Demand, the operative complaint in this case, on May 26, 2020. (Doc. # 10.) The First Amended Complaint names four additional defendants—i.e., Mind-2-Motion, LLC; Mind2Motion Golf, LLC; Motion Memory Golf, LLC; and Alison Thietje, and asserts the following five claims: (1) violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) unjust enrichment; (3) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*; (4) misappropriation of business value/commercial theft; (5) defamation; and (6) commercial disparagement.[1]

Chuck Quinton is the sole member of Plaintiff Quinton Holdings, LLC, which does business as RotarySwing Golf, LLC ("Rotary Swing"). Rotary Swing is a subscription-based golf instruction service. Defendant Eric Kaplan owns a competing golf instruction service, Axys Golf. Plaintiff alleged in the original complaint and continues to allege in the Amended Complaint that Defendants Axys Golf and Kaplan have stolen Mr. Quinton's business good will, as well as his lessons, teaching methodology, and business plans. In the Amended Complaint, Plaintiff further alleges that Defendant Kaplan teamed up with Defendant Thietje after the filing of the Complaint to "improperly flood the marketplace with unwarranted and fake negative publicity about Rotary Swing in the promotion of their respective businesses." Plaintiff alleges that "Defendants co-produced and co-publicized in April/May 2020 multiple online videos and written statements that are false or misleading, promoting their own businesses, at the expense

---

[1] Plaintiff lists "permanent injunction" and "preliminary injunction" as its seventh and eighth claims, respectively. Both forms of injunction are remedies, as opposed to claims.

of Rotary Swing, hosted on the website domain: www.RotaryTruth.com . . . ." (Doc. # 10 at 2) (emphasis omitted).

Plaintiff filed the instant Motion for Preliminary Injunction and Temporary Restraining Order on June 1, 2020. (Doc. # 13.) Plaintiff seeks a preliminary injunction on the basis of its first claim for relief (violation of the Lanham Act). It moves the Court to order Defendants to take down RotaryTruth.com and its associated webpages for the pendency of this action and to enjoin Defendants from causing any content from RotaryTruth.com to be published on any other medium.

Defendants Kaplan and Axys Golf responded to the motion on June 2, 2020. (Doc. # 19.) In their response, Defendants Axys Golf and Kaplan assert that RotaryTruth.com "exists only because Mr. Quinton, without warning, began an aggressive campaign to destroy Axys Golf's competing business and Mr. Kaplan's reputation." (Doc. # 19 at 5–6.) They state that "[t]hrough RotaryTruth.com, [Mr. Kaplan] detailed [Mr. Quinton's] harassment and facts confirming that Quinton is the true fraud, including because he effectively stole his teaching methods from biomechanics expert Alison Thietje, whose videos and materials taught the same techniques to Mr. Kaplan." (*Id.* at 2.)

Upon review of the Motion and the response, the Court ordered Defendants to brief whether the Court should enjoin Plaintiff's conduct because the alleged conduct of both sides appeared egregious and unprofessional. Defendants filed their response to the Court's order, entitled Defendants Axys Golf LLC's and Eric Kaplan's Brief Regarding Charles Quinton Online Activities, on June 24, 2020. (Doc. # 40.) Plaintiff

filed its Response to Defendants Axys Golf LLC's and Eric Kaplan's Brief Regarding Charles Quinton Online Activities ("the Reply") on June 29, 2020. (Doc. # 45.)

On July 8, 2020, Defendants Kaplan and Axys Golf filed Defendants' Special Motion to Dismiss Pursuant to Colorado's Anti-SLAPP Statute, Colo. Rev. Stat. § 13-20-1101, wherein Defendants Kaplan and Axys Golf move the Court to dismiss all claims pertaining to the website RotaryTruth.com pursuant to Colorado's recently enacted Anti-SLAPP statute, Colo. Rev. Stat. § 13-20-1101. (Doc. # 50.) A Request for Hearing on Defendants' Special Motion to Dismiss Pursuant to Colorado's Anti-SLAPP Statute, Colo. Rev. Stat. § 13-20-1101, followed. (Doc. # 51.)

## II.   LEGAL STANDARDS

Injunctive relief is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A party seeking a preliminary injunction or temporary restraining order must show (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction, or, put differently, that the balance of equities tips in the movant's favor; and (4) the injunction would not be adverse to the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009); *Kaplan v. Bank of N.Y. Mellon Trust Co.*, No. 10-cv-02802-PAB, 2010 WL 4775725, at *1 (D. Colo. 2010) (citing *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980)) (noting that the four elements apply to both preliminary injunctions and

temporary restraining orders and that "the same considerations apply" to both forms of injunctive relief). Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

Certain types of preliminary injunctions are disfavored. They include: "(1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits." *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098–99 (10th Cir. 1991). For one of these disfavored preliminary injunctions to issue, the movant must carry the heavier burden of showing that the following four factors "weigh heavily and compellingly in the movant's favor." *Id.* at 1098. "[M]andatory injunctions are not granted in doubtful cases in which the facts and law do not clearly favor the moving party." *American Carriers, Inc. v. Baytree Investors, Inc.,* 685 F.Supp. 800, 806 (D. Kan. 1988) (citations omitted).

### III.   DISCUSSION

**A.   MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

As described below, Plaintiff has failed to carry its burden to clearly and unequivocally demonstrate the necessity of the requested injunction. *See Schrier*, 427 F.3d at 1258. In particular, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits on its Lanham Act claim, that the balance of equities weigh in

favor of enjoining Defendants, or that an injunction would not be adverse to the public interest. *Fish*, 840 F.3d at 723.[2]

      1.    <u>Likelihood of Success on the Merits</u>

To succeed on a claim under section 43(a) of the Lanham Act, Plaintiff must satisfy the following elements: (1) that the defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injury to the plaintiff. *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999). Plaintiff has not demonstrated a substantial likelihood of success on this claim. Specifically, Plaintiff has failed to establish a substantial likelihood that a jury will find the alleged misrepresentations are both (a) material and (b) false or misleading.[3]

First, Plaintiff has not established that each of the alleged misrepresentations is material. To establish that a representation is material, Plaintiff must show that it is likely to influence purchasing decisions. *See Hill's Pet Nutrition, Inc. v. Nutro Products, Inc.*, 258 F. Supp. 2d 1197, 1211 (D. Kan. 2003). For example, Plaintiff has sufficiently demonstrated through Mr. Quinton's declaration that the representation that Mr. Quinton

---

[2] The parties dispute whether Plaintiff seeks a mandatory or prohibitory injunction, and therefore whether the requested injunction is disfavored. The Court need not decide this issue because the Court finds that Plaintiff's Motion fails under the lower standard.

[3] Plaintiff identifies 12 alleged misrepresentations in the instant Motion. (Doc. # 13 at 5–6.) In the interest of judicial economy, the Court analyzes only some of the alleged misrepresentations herein.

sold snowboards before he started his golf instruction company is false.[4] However, Plaintiff has not established that such a false statement is in any way material, or put differently, that it is likely to influence a consumer's purchasing decision. Similarly, Plaintiff objects to Defendants' statements related to a contract concerning Mr. Quinton and Ms. Thietje on the basis that the contract was actually signed in 2009, not 2008, and the contract was executed with Motion Memory Golf, LLC, not Ms. Thietje personally.[5] (Doc. # 13 at 12–14.) Again, Plaintiff has fails to establish that these differences are material.

Second, Plaintiff has not sufficiently demonstrated that the alleged misrepresentations are indeed false or misleading. For example, Plaintiff takes issue with the statement that "Chuck [Quinton] claims that Eric [Kaplan] had stolen his life's work, when in fact Chuck signed a contract in 2008 with Alison Thietje, someone Eric Kaplan learned from, to develop RotarySwingTour…". (Doc. # 13 at 13–14.) Plaintiff characterizes this statement as misleading, stating that "Plaintiff contracted for the rights to use any Preexisting Content and the contract was terminated in accordance with its terms." (*Id.* at 14); (Doc. # 13-1 at 4). Notably, Plaintiff has not provided this Court with the contract or any proof of payment to Ms. Thietje. Further, Plaintiff does not claim in its Motion that Mr. Kaplan's interviews of Ms. Thietje, which were published on

---

[4] Alleged Misrepresentation 4 reads as follows: "[Ms. Thietje] also recalls that before [Quinton] started his online golf instruction marketing company, he was selling snowboards. LOL". Quinton states in his Declaration that he has never sold snowboards or worked in the snowboard sales industry. Quinton was a sponsored snowboarder in college. (Doc. # 13-1 at 4.)

[5] Plaintiff alleges that the sole member of Defendant Motion Memory Golf, LLC ("MMG") is Defendant Thietje and that Defendant Mind-2-Motion is the successor entity of MMG, which no longer engages in business operations. (Doc. # 10 at 6.)

RotaryTruth.com and include very similar allegations, are misrepresentative. The record before the Court does not establish that the alleged misrepresentations are indeed false or misleading for the purposes of granting the "drastic relief" of a preliminary injunction.[6] *See United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 883 F.2d at 888-89.

Lastly, the Court notes that Plaintiff's arguments against Defendants Kaplan and Axys Golf's counterclaim for defamation cut against Plaintiff's arguments in support of injunctive relief on its Lanham Act claim. For example, Plaintiff argues in its Reply that Mr. Quinton provided mere opinions—not representations of fact—when he called Mr. Kaplan a fraud and a snake oil salesman, stated that Mr. Kaplan plagiarized his teaching material, and characterized Mr. Kaplan taking down a Youtube video as an "admission of guilt." (Doc. # 45 at 3–4.) On the other hand, Plaintiff argues that Mr. Kaplan made a false representation of fact, as required by Section 43(a) of the Lanham Act, when he published the following statement on RotaryTruth.com: "Chuck and I are in completely different leagues, I work with Major Champions, and he's a guy who sells other people's concepts for profit, with no resume or proven qualifications." Plaintiff retorts that "Quinton is not 'a guy' 'with no resume or proven qualifications.' He was a professional golfer and teaching professional at a private club." (Doc. # 13 at 15.) Plaintiff's most recent logic would support a finding that many of Mr. Kaplan's statements are mere opinions and not false representations of fact.

---

[6] To the extent Plaintiff identifies "suspected falsehoods" in its Motion and in Mr. Quinton's declaration, such speculation is insufficient to justify injunctive relief, which requires a clear and unequivocal demonstration of the necessity of an injunction. *See Schrier*, 427 F.3d at 1258.

8

    2.    <u>Balance of the Equities</u>

Second, the Court finds that the balance of the equities weighs strongly against granting the requested injunctive relief. It is manifest from the record before this Court that Mr. Quinton and Mr. Kaplan have both engaged in conduct unbecoming of professionals and that the online mudslinging at issue in Plaintiff's Motion is a two-way street. For example, Mr. Quinton published a video on YouTube titled "Golfers BEWARE: Avoid Being Scammed by this FRAUD," which is approaching 20,000 views, wherein Mr. Quinton calls Mr. Kaplan a fraud and a snake oil salesman, accuses Mr. Kaplan of stealing "[his] content, [his] ideas, [his] teaching methodology"; and states that the Axys Golf website is a "blatant carbon copy of all the stuff [Mr. Quinton has] spent [his] entire life working on" and that Mr. Kaplan "literally publish[es] all of [Mr. Quinton's] stuff as his own."[7] He states three times that Mr. Kaplan taking down his videos when contacted by Mr. Quinton was an "obvious admission of guilt" and asks his YouTube viewers, "how long was he going to run this scam on everybody?" Additionally, Mr. Quinton sent an email to thousands of Rotary Swing email subscribers that warns: "**you may have been scammed by a complete <u>FRAUD</u> in the golf industry. <u>Click here to see if you've been a victim of this charlatan's scam…</u>**" (Doc. # 19-2 at 12–13). Further, Mr. Quinton posted to the following call to action on the RotarySwing.com Facebook group: "Hey everyone, can you do me a favor? Please leave a comment on this dirt bag's youtube video (Eri[c] Kaplan) who is plagiarizing my concepts for his own

---

[7] RotarySwing.com Golf Instruction, *Golfers BEWARE: Avoid Being Scammed by this FRAUD*, YOUTUBE (March 24, 2020), https://www.youtube.com/watch?v=hKXzj2bpD34 (last visited July 14, 2020).

financial benefit . . . ." (*Id.* at 10.)

At this juncture, it appears to the Court that both Mr. Quinton and Mr. Kaplan can attribute a significant amount of their shared teaching methodology to Ms. Thietje and that Plaintiff has obfuscated the origin of the teaching methodology behind Rotary Swing Tour. *See, e.g.*, (Doc. # 45-1 at 2) ("Rotary Swing teaching methods are not based on any teachings by Alison Thietje."). Further, it appears that some of the golf fundamentals Mr. Quinton claims Mr. Kaplan stole from him have been in circulation since 1932. *See* (*id.* at 21) (citing Alex J. Morrison, A New Way to Better Golf (1932)). Accordingly, equity demands that the Court not repress all statements made by Mr. Kaplan and Ms. Thietje on RotaryTruth.com, thereby allowing Mr. Quinton's side of the story to persist on the internet unchallenged.

    3.    Public Interest

Lastly, the Court shares Defendants' concern that the requested injunction is overly broad and would encroach on their First Amendment rights. "The law requires that courts closely tailor injunctions to the harm that they address." *ALPO Petfoods v. Ralston Purina Co.*, 913 F. 2d 958 (D.C. Cir. 1990) (holding injunction implemented by district court suppressed more speech than necessary to avoid deception of consumers and harm to the plaintiff). Even assuming that all twelve alleged misrepresentations are false or misleading, Plaintiff has not alleged that all of the content on RotaryTruth.com is false or misleading. Indeed, from the Court's review of RotaryTruth.com, it is evident that the alleged misrepresentations constitute a minority of content on the website. Therefore, the Court concludes that granting the requested injunction would encroach

on Defendants' First Amendment rights and unnecessarily restrain the public flow of information.

As Plaintiff has failed to demonstrate a substantial likelihood of success on the merits, that the balance of equities weigh in favor of an injunction, or that an injunction serves the public interest, Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order is denied.

## B.   DEFENDANTS' SPECIAL MOTION TO DISMISS

Defendants Kaplan and Axys Golf move to dismiss Plaintiff's claims concerning RotaryTruth.com pursuant to Colo. Rev. Stat. § 13-20-1101. In doing so, Defendants argue that Plaintiff made the disagreement between Plaintiff and Defendants an issue of public interest within the meaning of the statute and that Plaintiff's claims against Defendants relating to RotaryTruth.com seek to restrain protected speech on a matter of public concern. However, Defendants Kaplan and Axys Golf have failed to persuade this Court that Plaintiff's claims are covered by Colorado's Anti-SLAPP statute.

Indeed, Colo. Rev. Stat. § 13-20-1101 contains a carve-out for precisely the kinds of claims involved in this case. Section 8(a) states:

This section does not apply to:

(III) **Any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services**, including but not limited to insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:

(A) **The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services that are made for the purpose of obtaining approval for, promoting, or securing sales** or leases of, or commercial transactions in, the person's goods or services, or the

11

> statement or conduct was made in the course of delivering the person's goods or services; and
>
> (B) **The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer**, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except when the statement or conduct was made by a telephone corporation in the course of a proceeding before the public utilities commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.

Colo. Rev. Stat. § 13-20-1101(8)(a)(III) (emphasis added). The instant case is precisely a case of this kind. Plaintiff initiated suit against Mr. Kaplan, who sells golf lessons (a person primarily engaged in the business of selling services). The case concerns statements Mr. Kaplan made about Mr. Quinton (a business competitor of Mr. Kaplan's). Plaintiff has alleged that Mr. Kaplan's statements were made to influence consumers to buy Defendants' goods and services. (Doc. # 13 at 11.) This is supported by the promotional material for Axys Golf found on each webpage of RotaryTruth.com, which includes a hyperlink titled "learn more about Eric Kaplan and Axys Golf" that leads to a list of courses for purchase on the Axys Golf homepage.[8] Accordingly, the Court concludes that Colorado's Anti-SLAPP statute does not apply to the instant lawsuit and denies Defendants' Special Motion to Dismiss on this basis.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction

---

[8] AXYS GOLF, https://www.axysgolf.com (last visited July 14, 2020).

(Doc. # 13) is DENIED;

- Accordingly, the July 30, 2020 hearing on Plaintiff's Motion is hereby VACATED;

- Defendants' Special Motion to Dismiss Pursuant to Colorado's Anti-SLAPP Statute, Colo. Rev. Stat. § 13-20-1101 (Doc. # 50) is DENIED;

- The Request for Hearing on Defendants' Special Motion to Dismiss Pursuant to Colo. Rev. Stat. § 13-20-1101 (Doc. # 51) is DENIED as MOOT;

- The parties are DIRECTED to contact Magistrate Judge Hegarty's Chambers to schedule an Early Neutral Evaluation.[9]

DATED: July 14, 2020

BY THE COURT:

*Christine M Arguello*
CHRISTINE M. ARGUELLO
United States District Judge

---

[9] Defendants' filings suggest that Defendants Axys Golf and Kaplan have repeatedly attempted to discuss the possibility of settlement with Plaintiff's counsel but have been unsuccessful in doing so. *See* (Doc. # 40 at 10) (section titled "Mr. Kaplan Is Strung Along By Bad Faith Settlement Negotiations).